UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WANDA DENISE DUKES,

   Plaintiff,

  v.                18-CV-6438
                   DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

---

On June 13, 2018, the plaintiff, Wanda Denise Dukes, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On February 4, 2019, Dukes moved for judgment on the pleadings, Docket Item 9; on April 4, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on April 25, 2019, Dukes replied, Docket Item 14.

For the reasons stated below, this Court grants Dukes's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.  PROCEDURAL HISTORY

On October 6, 2014, Dukes applied for Supplemental Security Income benefits. Docket Item 8 at 182. She claimed that she had been disabled since September 4, 2013, due to a "[l]umbar spine injury from [a] motor vehicle accident"; arthritis; "[m]ild depression due to constant back pain/injury"; a "[b]ack injury"; "[a]nxiety due to side

effects of med[ications] and constant pain"; "sciatic leg/nerve pain evolving from [a] pinched nerve [i]n [her] back"; "frequent memory loss due to medications"; a "lumbosacral strain"; lumbar spondylosis; myofascial pain; being "limited in lifting, bending, standing, [and] twisting"; and "chronic back pain from [her] past." *Id.* at 209.

On January 29, 2015, Dukes received notice that her application was denied because she was not disabled under the Act. *Id.* at 100. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 109, which was held on April 13, 2017, *id.* at 34-88. The ALJ then issued a decision on June 27, 2017, confirming the finding that Dukes was not disabled. *Id.* at 12-27. Dukes appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5-7.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Dukes's appeal. Dukes was examined by several different providers, but only the opinions of internist Todd Bingemann, M.D.; internist Patrick Ellsworth, M.D.; physiatrist Christina Taddeo, M.D.; orthopedic surgeon M. Gordon Whitbeck, M.D.; professionals at the Pain Interventions Group; neurologist Harbinder Toor, M.D.; psychologist Kathryn Vullo, Ph.D.; and psychologist Yu-Ying Lin, Ph.D., are of most significance to the claim of disability here.

### A. Todd Bingemann, M.D.

On October 6, 2014, Dr. Bingemann, an internist, completed an evaluation of Dukes for the Monroe County Department of Human Services ("Monroe DSS"). He noted that Dukes had pain in her lower spine, had been prescribed two pain medications, and used a transcutaneous electrical nerve stimulation (TENS) unit. *Id.* at

361.  Dr. Bingemann opined that, for at least the following three months, Dukes could not bend, twist, or lift more than 10 pounds.  *Id.* at 360.  He further opined that Dukes was not limited in sitting or seeing, hearing, and speaking; was "moderately limited" (two to four hours in an eight-hour day) in walking; and was "very limited" (one to two hours in an eight-hour day) in standing, pushing, pulling, bending, and lifting and carrying objects.  *Id.* at 362.

On October 11, 2016, Dr. Bingemann completed a second evaluation for Monroe DSS.  He noted that he had treated Dukes for more than thirteen years and that she had an abnormal gait as well as musculoskeletal and neurological pain.  *Id.* at 879-82.  He opined that, for at least the next three to six months, Dukes was "moderately limited" in sitting and seeing, hearing, and speaking; and "very limited" in walking, standing, pushing, pulling, bending, and lifting or carrying objects.  *Id.* at 882.  More specifically, he said that she could stand only for 15-20 minutes at a time, could push or pull only up to five pounds, and could lift or carry only up to five pounds.  *Id.*

On May 9, 2017, Dr. Bingemann completed a medical opinion statement for the Social Security Administration.  He noted that he had treated Dukes three to four times per year over the course of thirteen years.  *Id.* at 895.  He listed a diagnosis of low back pain, which he expected to last at least twelve months.  *Id.*  Dr. Bingemann opined that stress affected Dukes's physical condition and that she was capable of only "low stress jobs."  *Id.* at 896.  He further opined that Dukes could sit for only thirty minutes at one time and for up to four hours in one day; stand for only fifteen minutes at one time and for a total of less than two hours in one day; needed to walk for at least five minutes every thirty minutes; could lift and carry less than 10 pounds occasionally and 10-20

pounds rarely; could twist, stoop, crouch/squat, and climb stairs rarely; and could never climb ladders. *Id.* at 896-98. Dr. Bingemann also found that as a result of her impairments, Dukes would need to take at least ten unscheduled breaks during an eight-hour work day and was likely to be absent from work more than four days per month. *Id.*

### B. Patrick Ellsworth, M.D.

On November 14, 2014, Dr. Ellsworth, another internist, completed an evaluation for Monroe DSS. He noted that he had treated Dukes six times in the prior twelve months, *id.* at 371, and he diagnosed lumbar strain and neuralgia, lumbar radiculopathy, low- and mid-back pain, sciatica, lumbar ligament pain, and paresthesia, *id.* at 373. He opined that, for at least the next three to six months, Dukes would have no limitations in seeing, hearing, and speaking; would be "moderately limited" (two to four hours) in sitting; and could not walk for more than two hours. *Id.* at 375. Dr. Ellsworth apparently noted additional limitations in walking, standing, pushing, pulling, bending, and lifting or carrying objects, but his notations are not legible. *Id.*

### C. Christina Taddeo, M.D.

On April 23, 2015, Dr. Taddeo, a physiatrist, completed an evaluation for Monroe DSS. She noted that she had treated Dukes since April 3, 2014, and had seen Dukes ten times in the prior twelve months. *Id.* at 539. She diagnosed lumbosacral strain, lumbar spondylosis, myofascial pain, and neuropathic pain in her legs. *Id.* at 541.

Dr. Taddeo opined that Dukes was unable to work for an "indeterminate/indefinite"—but not a "permanent"—timeframe. *Id.* at 540. She also opined that Dukes "[could] not sit[, ] stand[, ] walk, [or] perform bending, lifting, pushing,

4

[or] pulling maneuvers for any time greater than 15-20 min[utes] . . . or lift more than 5 pounds . . . due to her chronic pain issue." *Id.*

On September 24, 2015, Dr. Taddeo completed a second evaluation for Monroe DSS. She noted that she had treated Dukes seven times in the prior twelve months. *Id.* at 551. She listed the same diagnoses and provided the same opinion regarding Dukes's functional limitations. *Id.* at 553.

On February 25, 2016, Dr. Taddeo completed an evaluation for the Social Security Administration. She opined that Dukes's impairments were likely to last for more than one year and resulted in the following functional limitations: Dukes could not stand for more than six hours; required rest breaks from both standing and sitting every thirty minutes; could walk only 800 to 1000 feet without stopping; could reach down toward the floor only rarely (0-30% of an eight-hour work day); could reach above her shoulders or down to her waist frequently (30-70% of the day); could handle objects and manipulate objects with her fingers consistently (70-100% of the day); and could lift and carry only up to 10 pounds. *Id.* at 567. Dr. Taddeo concluded that "Dukes could return to her previous work doing secretarial type activities, but she would need to change positions every 30 minutes due to pain in her back. She would also have physical restrictions at work . . . [and] may not tolerate an 8 [hour] workday . . . due to pain." *Id.* at 569.

Dr. Taddeo resubmitted the same evaluation to the Social Security Administration on August 2, 2016, noting that she had last seen Dukes on February 25, 2016, and had seen her a total of 15 times since April 2014. *Id.* at 677.

### D. M. Gordon Whitbeck, M.D.

On March 13, 2015, Dr. Whitbeck, an orthopedic surgeon, completed a treatment progress note for Dukes. He had previously evaluated Dukes on February 2, 2015, when he noted that she walked with a "physiologic" (normal) gait, had pain with heel walking, was tender in the low lumbar region "even to light touch," had mild discomfort throughout her lower thoracic spine, and had mild sciatic notch tenderness bilaterally. *Id.* at 833. He noted that a May 28, 2014 MRI of Dukes's lumbar spine did not "implicate [anything specific] as an etiology for her low back pain." *Id.* at 835. He also noted that Dukes had an "obvious congenital deformity in the region of the lumbosacral junction with some left-sided foraminal encroachment of L4-5 and L5-S1," which likely did not have "any bearing on [her] low back pain." *Id.* Dr. Whitbeck opined that although "conservative management" did not produce "substantial relief," "surgical intervention [was not] likely to predictably relieve [Dukes's back pain]." *Id.* He concluded that Dukes "ha[d] a temporary marked partial disability and [was] capable of working in a capacity designated as light rather than sedentary with a 10-15-lb lifting restriction." *Id.* at 835.

### E. Pain Interventions Group

Dukes also was treated at least six times between August 2014 and January 2017 by specialists at the Pain Interventions Group. *Id.* at 337, 338, 471, 473, 662, 892. Anthony Inzana, P.A., noted moderate pain in Dukes's low back, as well as tenderness and spasms, and diagnosed the following conditions: degeneration of lumbar or lumbosacral intervertebral disc, spinal stenosis-lumbar, and lumbago. *Id.* at 338.

### F. Harbinder Toor, M.D.

On January 7, 2015, Dr. Toor, a neurologist, completed a consultative internal medicine evaluation of Dukes. Dr. Toor noted prior diagnoses of back pain, left ankle bursitis, asthma, hypertension, migraine headaches, and disc disease in the lumbar spine. *Id.* at 464. He opined that Dukes had "moderate-to-severe limitations standing, walking, bending, [and] lifting" and "moderate limitations sitting a long time." *Id.* He also noted that "[p]ain and headache [could] interfere with [Dukes's] routine" and that she "should avoid irritants or other factors which can precipitate asthma." *Id.*

### G. Kathryn Vullo, Ph.D.

On November 13, 2013, Dr. Vullo, a psychologist, evaluated Dukes and diagnosed a pain disorder "[a]ssociated with [b]oth [p]sychological [f]actors and a [g]eneral [m]edical [c]ondition," as well as an adjustment disorder "with [a]nxiety and [d]epressed [m]ood." *Id.* at 637. Dr. Vullo recommended 10-12 sessions of "cognitive behavioral therapy . . . to assist [Dukes] in better managing [her] pain." *Id.* Dukes attended eight therapy sessions with Dr. Vullo between December 2014 and November 2015. Dr. Vullo's discharge notes state that Dukes "report[ed] that she [was] doing better managing her pain and limitations." *Id.* at 648.

### H. Yu-Ying Lin, Ph.D.

On January 7, 2015, Dr. Lin, a psychologist, completed a consultative psychological examination of Dukes. Dr. Lin found that Dukes's attention, concentration, and recent and remote memory skills were "[m]oderately impaired due to nervousness . . . and physical pain," *id.* at 458, 459, but that her cognitive functioning, insight, and judgment were within normal limits, *id.* Dr. Lin diagnosed "[d]epressive

7

disorder due to medical conditions with anxiety and stress" and opined that Dukes "[could] follow and understand simple instructions" and "perform simple tasks independently"; was "mildly limited" in "maintaining attention and concentration," "maintain[ing] a regular schedule," and "learn[ing] new tasks"; and was "moderately limited" in "performing complex tasks independently," "mak[ing] appropriate decisions," "relat[ing] adequately with others," and "appropriately dealing with stress." *Id.* at 459-60. She further opined that Dukes's "[d]ifficulties [were] caused by stress-related problems." *Id.* at 459.

### III. THE ALJ'S DECISION

In denying Dukes's application, the ALJ evaluated Dukes's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ

8

finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ found that Dukes had not engaged in substantial gainful activity since the alleged onset date. Docket Item 8 at 17. At step two, the ALJ found that Dukes had "the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, ankle bursitis, depressive disorder, and anxiety

9

disorder." *Id.* The ALJ found that Duke's hypertension, asthma, migraine headaches, and mild sleep apnea were "non-severe." *Id.*

At step three, the ALJ determined the Dukes did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 18. Specifically, the ALJ found that Dukes's degenerative disc disease and lumbar radiculopathy did not meet listing 1.04 (spinal disorders) and that her ankle bursitis did not meet listing 1.02 (major joint dysfunction). *Id.* at 18. Moreover, the ALJ found that Dukes's mental impairments did not meet either listing 12.04 (depressive, bipolar, and related disorders) or listing 12.06 (anxiety and obsessive-compulsive disorders) because Dukes did not have at least two marked limitations or one extreme limitation in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. *Id.* at 18-19.

Before proceeding to step four, the ALJ found that Dukes had the following RFC:

> [The] capacity to perform light work[1] . . . except [she] must be allowed to change position for at least 5 minutes after standing for 30 minutes, but retains the ability to remain on task[;] . . . can occasionally stoop, but can never crouch, kneel, or crawl[;] . . . can frequently reach in all directions[; and] . . . can handle reasonable levels of simple work-related stress . . . [and] make simple decisions directly related to the completion of [her] tasks and work in a position where [she] is not responsible for the work of others and with little change in daily routine or work duties or processes.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

10

*Id.* at 19. In reaching this determination, the ALJ accorded "little weight" to the opinions of Dr. Bingemann, Dr. Elsworth, Dr. Taddeo, and Dr. Whitebeck; "partial weight" to the opinion of Dr. Toor; and "great weight" to the opinion of Dr. Lin. *Id.* at 22-25.

At step four, the ALJ found that Dukes had no past relevant work. And at step five, the ALJ found that "[c]onsidering [Dukes's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Dukes] could perform." *Id.* at 26. Specifically, the ALJ credited the testimony of a vocational expert that Dukes could find work as an office helper, order caller, or photocopier. *Id.* at 27.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

11

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Dukes raises three challenges to the ALJ's determination that she was not disabled. Docket Item 9-1. First, she argues that the ALJ erred procedurally by not explaining the reasons for according less-than-controlling weight to the opinions of her treating physicians, Drs. Taddeo and Bingemann. *Id.* at 19-27. Second, Dukes argues that the ALJ's determination of her physical RFC is not supported by substantial evidence. *Id.* at 27-28. Finally, Dukes argues that the ALJ's mental RFC finding is not supported by substantial evidence because the ALJ did not adequately consider Dukes's stress tolerance. *Id.* at 28-30. The Court agrees that the ALJ erred in the first and third respects and that those errors require remand so that the ALJ may properly consider the opinions of Dukes's treating physicians as well as the impact of Dukes's stress tolerance on her mental RFC.

### IV.    **TREATING-PHYSICIAN RULE AND PHYSICAL RFC**

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are most able to "provide a detailed, longitudinal picture of [the claimant's] medical impairments." *See*

12

20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ accorded "little weight" to the opinions of two treating physicians—Dr. Bingemann, an internist who had treated Dukes over the course of thirteen years, Docket Item 8 at 879-82, and Dr. Taddeo, a physiatrist who had treated Dukes fifteen times over a span of approximately two years, *see id.* at 677—without "explicitly apply[ing]" all the *Burgess* factors. *See Estrella*, 925 F.3d at 96. Specifically, although the ALJ referenced various individual treatment notes from Dr. Taddeo starting in June 2014 and ending in August 2016, she did not acknowledge or consider the persuasive

impact of Dr. Taddeo's specialty (physiatry[2]) or her extensive history of treating Dukes (fifteen separate sessions over a two-year period). Docket Item 8 at 21-25. Nor did the ALJ acknowledge Dr. Bingemann's long treatment relationship with Dukes (thirteen years). *Id.* In other words, the ALJ addressed Dukes's treatment by these physicians but omitted any discussion of two of the four *Burgess* factors: "the frequency, length, nature, and extent of treatment" and "whether the physician is a specialist." *See Greek*, 802 F.3d at 375. Ignoring these *Burgess* factors and then assigning less-than-controlling weight to those treating sources' opinions was procedural error. *See Estrella*, 925 F.3d at 95.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [the Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to the opinions of Drs. Taddeo and Bingemann. *See id.* at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). This Court finds no such assurance.

---

[2] "Physiatry is a 'branch of medicine that deals with the prevention, diagnosis, and treatment of disease or injury, and the rehabilitation from resultant impairments and disabilities.'" *Ingram v. Astrue*, No. CIV. SKG-11-1729, 2013 WL 1175444, at *10 (D. Md. Mar. 20, 2013) (quoting Dorland's Illustrated Medical Dictionary at 1443 (32d ed. 2012)). Given her special training in this field, Dr. Taddeo's opinion regarding Dukes's back injuries might therefore be more persuasive than the opinion of a generalist, such as Dr. Toor, to whose opinion the ALJ accorded greater weight on this issue without explicitly addressing each professional's area of expertise.

Although both Drs. Taddeo and Bingemann concluded that Dukes's physical impairments would prevent her from sitting, walking, and standing for the duration of an eight-hour workday, the ALJ imposed no such cumulative limitation in Dukes's RFC. *See* Docket Item 8 at 19 (limiting Dukes to work in which she could "change position for at least 5 minutes after standing for 30 minutes" but imposing no cumulative restriction for sitting, standing, and walking). This Court does not identify any "good reasons" in the record for rejecting Drs. Taddeo's and Bingemann's opinions on this issue. On the contrary, it finds significant support for those opinions.

Dr. Bingemann's treatment notes indicate that Dukes had a lumbosacral sprain, lumbar spondylosis, severe left and mild right neural foraminal narrowing, L5 radiculopathy, reduced range of motion in her lumbar region, and an abnormal gait requiring use of a cane to ambulate. *Id.* at 665-70. These notes support Dr. Taddeo's opinion that Dukes could not sit or stand for more than six hours and "may not tolerate" an eight-hour work day. *Id.* at 567. Those same notes also support Dr. Bingemann's opinion that Dukes could sit for less four hours and stand and walk for less than two hours (*i.e.*, sit, stand, and walk for a combined total of less than six hours in an eight-hour work day). *Id.* at 897.

In fact, there is no medical opinion in the record supporting the ALJ's implicit finding that Dukes had no cumulative limitations in sitting, standing, and walking. Dr. Ellsworth opined that Dukes could sit for only two to four hours and stand for less than four hours in an eight-hour work day. *Id.* at 375. And even the consulting physician, Dr. Toor, opined that Dukes had "moderate-to-severe limitations standing, walking, bending, [and] lifting" and "moderate limitations sitting a long time." *Id.* at 464.

15

In reaching a different conclusion, the ALJ seems to have relied on her own lay interpretations of the raw medical evidence, including the results of a December 2016 X-ray that the ALJ concluded trumped both Dr. Taddeo's July 2016 interpretation of a 2014 MRI and Dr. Bingemann's May 2017 interpretation of both the 2014 MRI and the same 2016 X-ray. *See id.* at 25, 569, 897. But "as a lay person, the ALJ simply was not in a position to know whether" the X-ray results "would in fact preclude the disabling [limitations] described by [Drs. Taddeo and Bingemann] in [their] assessment[s]." *See Rosa*, 168 F.3d at 79 (original alterations omitted).

In light of the ALJ's failure to "explicitly consider" the *Burgess* factors before assigning limited weight to the opinions of two of Dukes's treating sources, and because there are no apparent good reasons to support that assignment of weight, the ALJ violated the treating-physician rule. And that error undoubtedly inured to Dukes's prejudice. *See id.* at 53 (vocational expert testifying that there were "no jobs on a full-time consistent basis" available for someone who "is able to perform walking, standing and sitting in combination for less than eight hours a day"). The matter therefore is remanded to the ALJ so that she can reconsider Duke's claim for disability benefits consistent with the procedural mandates of the Act as interpreted by the Second Circuit.

This Court "will not reach the remaining issues raised by [Dukes concerning her physical RFC] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet*, 2015 WL 729707, at *7 ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

## V.     STRESS TOLERANCE

Dukes also argues that the ALJ failed to consider the impact of her stress tolerance in determining that she could perform jobs that exist in the national economy. *See* Docket Item 9-1 at 28-30.  In this regard, Dr. Lin, to whose opinion the ALJ accorded "great weight," Docket Item 8 at 23, opined that Dukes was "moderately limited in appropriately dealing with stress" and that Dukes had "[d]ifficulties . . . caused by stress-related problems," *id.* at 459.  As such, the ALJ was required to make "specific findings about the nature of [Dukes's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work."  *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")).

The ALJ did not make those specific findings here.  And the ALJ's inclusion of a generalized limitation of "low stress work" in Dukes's RFC does not ensure this Court that such an individualized inquiry was undertaken.  As the Commissioner's own regulations explain:

> A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.  [F]or example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated,

17

even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *6.

In sum, the ALJ failed to undertake an individualized stress inquiry in concluding that Dukes could perform work as an office helper, order caller, or photocopier. *See* Docket Item 8 at 30-31 (concluding that Dukes could perform these jobs based on vocational expert's testimony that Dukes could do this work if she could "handle reasonable levels of simple work-related stress" and without any further explanation of how Dukes's individualized stress tolerance might impact her performance). On remand, the ALJ must explicitly consider how Dukes's stress tolerance could impact her physical and mental RFC as well as her ability to perform the specific job or jobs that otherwise fit her RFC profile.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Dukes's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: November 22, 2019
Buffalo, New York

                                            */s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE